**GREENPOINT CREDIT, L.L.C., Appellant,**

v.

**Vernon REYNOLDS and Mary Nations, Respondents.**

No. 26134.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 9, 2004.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 30, 2004.

Application for Transfer Denied Jan. 25, 2005.

David G. Wasinger, James S. Cole, Murphy Wasinger, L.C., St. Louis, John Holstein, Shughart Thompson & Kilroy, P.C., Springfield, for appellant.

Jeffrey L. Dull, Christopher S. Hite, Matthew D. Lowe, Dull, Hite & Lowe, L.L.C., Clinton, for respondents.

JOHN E. PARRISH, Presiding Judge.

GreenPoint Credit, L.L.C. (GreenPoint) appeals a judgment and order denying a motion to compel arbitration. *See* § 435.440.1(1).[1] This court affirms in part, reverses in part, and remands with directions.

In December 1999, GreenPoint and Vernon Reynolds entered into a contract by which Reynolds purchased a manufactured home.[2] The contract provided that Reynolds would pay GreenPoint $360.95 per month for a period of 240 months, beginning January 20, 2000. The contract granted GreenPoint a security interest in the property. GreenPoint was given the right to repossess the property if Reynolds defaulted. The contract provided that "default" included failure to make any payment when due. GreenPoint perfected its security interest in the property by recording it on the certificate of title to the manufactured home.

On October 11, 2002, GreenPoint filed a petition for replevin of the manufactured home in the Circuit Court of Hickory County, the county in which the manufactured home was located. The petition named Vernon Reynolds and Mary Nations as defendants. It alleged that Mary Nations was in possession of the property GreenPoint sought to replevy. A replevin bond was filed and approved by the trial court and an order of replevin entered.

Reynolds and Nations answered and counterclaimed. They denied Reynolds had defaulted in making payments under the terms of the contract. They alleged various affirmative defenses and asserted six counterclaims. Reynolds filed counterclaims for "wrongful replevin and conversion" (Count I), "fraud and fraudulent misrepresentations" (Count II), "abuse of process" (Count III), and "defamation" (Count VI). Nations filed counterclaims for "wrongful replevin and conversion" (Count IV) and "invasion of privacy" (Count V).

GreenPoint filed a motion to compel arbitration based on a provision in its contract with Reynolds that provided:

> a. **Arbitration.** You and I agree to arbitrate any and all (1) disputes, torts, counterclaims, or any other matter in question between you and I arising out of, in connection with, or in any way relating to this Agreement ("Claims") (including whether a Claim must be arbitrated) and (2) any Claims arising out of, in connection with, or relating to a transaction involving you and I and one or more third parties who have not signed this Agreement which a third party elects to arbitrate ("Third Party Claims"). However, neither you or I can require the other to

---

1. References to statutes are to RSMo 2000 unless stated otherwise.

2. The agreement described the manufactured home as including air conditioning, steps, and skirting. References in this opinion to the manufactured home are intended to include those items.

arbitrate (1) any proceeding in which a lien holder may acquire or convey title to or possession of any property which is security under this Agreement, or (2) an application by or on behalf of me for relief under the federal bankruptcy laws or any other similar laws of general application for the relief of debtors. Enforcement of this exception to arbitration at any time will not waive the right to arbitrate any other Claim or Third Party Claim, including those asserted as a counterclaim in a lawsuit under this exception to arbitration.

The trial court denied the motion finding:

First, the contract is a preprinted contract that is adhesive in nature. Second, the contract lacks mutuality in that it allows [GreenPoint] to pursue certain state court remedies, but precludes [Reynolds and Nations] from pursuing their claims in state court. Finally, by bringing this replevin in state court, [GreenPoint] is estopped from asserting the arbitration provision against [Reynolds and Nations].

### GreenPoint's Brief

■ GreenPoint raises one point on appeal. It states:

The circuit court erred in denying [GreenPoint's] motion to compel arbitration, because arbitration of [Reynolds' and Nations'] counterclaims was mandated in that (1) the Federal Arbitration Act governs, and (2) on the record presented, the arbitration agreement is valid and enforceable.

■ Rule 84.04(d)(1) states requirements for points on appeal directed to decisions of trial courts. A point relied on must (1) identify the trial court ruling being challenged; (2) state concise legal reasons for the claim of error; and (3) explain in summary fashion, in the context of the case, what supports the legal reasons stated. GreenPoint's point complies with requirements (1) and (2); however, it fails to provide the information required by (3), viz., in what manner, in the context of the case, the record before the trial court failed to support the legal reasons GreenPoint claims resulted in error.

■ An insufficient point on appeal preserves nothing for appellate review. *Tidball v. A.G. Service Center, L.C.,* 75 S.W.3d 850, 853 (Mo.App.2002). However, "[w]hether to dismiss an appeal for deficiencies in an appellant's brief is discretionary." *Keeney v. Missouri Highway and Transp. Com'n.,* 70 S.W.3d 597, 598 n. 1 (Mo.App.2002). "That discretion is generally not exercised unless the deficiency impedes disposition on the merits." *Id.* "A brief impedes disposition on the merits where it is so deficient that it fails to give notice to [the court] and to the other parties as to the issue presented on appeal." *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo. banc 1997). Having considered the argument portion of GreenPoint's appellant's brief and having received no objection from respondents, this court concludes the deficiency does not prevent the court or the other parties from identifying the issue presented; that it is appropriate to address GreenPoint's allegation of error on the merits.

### Enforceability of Arbitration Agreements

■ GreenPoint argues the trial court applied Missouri law; that it did not apply the Federal Arbitration Act. The only reference to applicable law in the order that has been appealed appears in the last sentence of the last paragraph. The printed text of the paragraph (which appears to be a proposed order provided by GreenPoint)

states, before editing by the trial court, "This Court hereby orders [GreenPoint's] Motion to Compel Arbitration is [sic] denied. Pursuant to R.S.Mo § 435.440 and 9 U.S.C. § 16, this constitutes an appealable order." The trial court modified the proposed order by delineation, drawing a line through the words "and 9 U.S.C. § 16." GreenPoint seems to suggest that this is a determination by the trial court that the Federal Arbitration Act does not apply.[3]

■ The Federal Arbitration Act applies to contracts involving interstate commerce. *Triarch Industries, Inc. v. Paul A. Crabtree d/b/a Crabtree Painting, Inc.*, —— S.W.3d ——, No. 61578, p. 3, 2004 WL 941218 (Mo.App.W.D. filed May 4, 2004). "[I]nvolving [interstate] commerce" is the functional equivalent of "affecting commerce." *Id.* The contract in this case specifies that arbitration will be governed by the Federal Arbitration Act. Further, the title to the manufactured home identifies GreenPoint's address as San Diego, California. Antonio Siso, legal department manager for GreenPoint, according to his affidavit in support of replevin, resides in Georgia. The contract was assigned to Bank One National Association. Clearly, the contract that GreenPoint entered into with Reynolds affects interstate commerce.

■ Before a court may compel arbitration pursuant to the Federal Arbitration Act, it must determine whether a valid agreement to arbitrate exists between the parties and whether the substance of the

disputes are issues of the type required to be arbitrated. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427–28 (Mo. banc 2003). "A court must compel arbitration if it determines that the parties agreed to arbitrate the dispute." *Id.* at 428, citing *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir.1994). The issue, therefore, becomes whether the disputes between the parties to this action are within the parameters of the arbitration provision of the contract. Whether a dispute is covered by an arbitration provision is a question of law. *Dunn, supra.* "An appellate court's review of the arbitrability of a dispute is de novo." *Id.*

*Who Was Bound by the Contract?*

■ The parties to the contract that contains the arbitration clause are Vernon Reynolds and GreenPoint. Reynolds is identified in the contract as "borrower." GreenPoint is identified as "lender." Mary Nations is not a party to the agreement.

■ Arbitration is a matter of contract and absent an agreement to arbitrate, a person cannot be compelled to do so. *Dunn, supra,* at 435. *See also Greenwood v. Sherfield*, 895 S.W.2d 169, 174 (Mo.App.1995). A non-signatory party to an arbitration agreement can, however, be bound by the agreement if he or she is an agent of a signing party or is a third-party beneficiary of the contract. *See Byrd v. Sprint Comm. Co., L.P.*, 931 S.W.2d 810,

---

**3.** An order denying arbitration is appealable pursuant to both Missouri law, *see* § 435.440.1, and the Federal Arbitration Act, *see* 9 U.S.C. § 16(a)(1)(B). State procedural law may be followed so long as the procedure does not defeat the substantive rights of the federal act. *See Greenwood v. Sherfield*, 895 S.W.2d 169, 172 (Mo.App.1995). "When arbitration is pursuant to the federal act but enforcement is sought in a Missouri court, the substantive law of the Federal Arbitration Act,

9 U.S.C. § 2, is to be given effect. *McClellan v. Barrath Construction Co., Inc.*, 725 S.W.2d 656, 658 (Mo.App.1987). However, 'the procedural provisions of the Federal Arbitration Act are not binding on state courts ..., provided applicable state procedures do not defeat the [substantive] rights granted by Congress.' *Id. See Bunge Corp. v. Perryville Feed & Produce, Inc.*, 685 S.W.2d 837, 839 [3, 4] (Mo. banc 1985)." *Id.*

813–15 (Mo.App.1996). There is no contention that Mary Nations was an agent of a signing party. GreenPoint contends, however, that it was apparent that acquisition of the manufactured home was for Ms. Nations; that, therefore, she was an intended beneficiary of the contract.

The problem with GreenPoint's assertion is that "[i]n determining whether [a party] was a third-party beneficiary to the contract, 'the question of intent is paramount . . . *[and] is to be gleaned from the four corners of the contract* [.]' " *Wilson v. General Mortgage Co.,* 638 S.W.2d 821, 823 (Mo.App.1982) (emphasis added), quoting *Laclede Inv. Corp. v. Kaiser,* 596 S.W.2d 36, 41 (Mo.App.1980). The contract expressed no intent to benefit Ms. Nations individually or as a member of an identifiable class. The record does not support a claim that the parties contracted other than for themselves without regard to others. Mary Nations was not bound by the arbitration clause of the agreement to which she was neither a party nor a third-party beneficiary.[4] The trial court committed no error in denying the motion to enforce arbitration with respect to Mary Nations. Claims she has asserted against GreenPoint are not covered by the arbitration agreement in GreenPoint's contract with Vernon Reynolds.

*Issues Determined by the Trial Court*

GreenPoint argues that each of the findings on which the trial court based its decision to deny GreenPoint's motion to compel arbitration was erroneous. Its first finding was that the contract was adhesive in nature.

"In Missouri, an adhesion contract, as opposed to a negotiated contract, has been described as a form contract creat-ed and imposed by a stronger party upon a weaker party on a 'take this or nothing basis,' the terms of which unexpectedly or unconscionably limit the obligations of the drafting party." *Hartland Computer Leasing Corp., Inc. v. Insurance Man, Inc.,* 770 S.W.2d 525, 527 (Mo.App. E.D.1989). Adhesion contracts usually involve the unequal bargaining power of a large corporation versus an individual and are often presented in pre-printed form contracts. *See High Life Sales Company v. Brown–Forman Corp.,* 823 S.W.2d 493, 497 (Mo.banc 1992). But they are not "inherently sinister and automatically unenforceable." *Hartland Computer,* 770 S.W.2d at 527. Because the bulk of contracts signed in this country are form contracts—"a natural concomitant of our mass production-mass consumer society"—any rule automatically invalidating adhesion contracts would be "completely unworkable." *Id.* Rather, our courts seek to enforce the reasonable expectations of the parties. *Id.* Only those provisions that fail to comport with those reasonable expectations and are unexpected and unconscionably unfair are unenforceable. *Id.* at 528. "Because standardized contracts address the mass of users, the test for 'reasonable expectations' is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent." *Id.*

*Swain v. Auto Services, Inc.,* 128 S.W.3d 103, 107 (Mo.App.2003).

An agreement to settle disputes through arbitration instead of litigation is not unconscionably unfair even between parties of unequal bargaining power. *Id* at 108. Mindful of the public policy favor-

---

**4.** The arbitration clause, quoted, *supra,* permits a third party to elect to arbitrate certain claims. Mary Nations did not elect to submit any claim for arbitration.

ing arbitration, *see Dunn*, 112 S.W.3d at 427, this court concludes that the average member of the public who accepts a contract such as the one entered into between GreenPoint and Vernon Reynolds would reasonably expect disputes involving whether either party was in default under its terms to be subject to arbitration rather than litigation. An agreement to settle disputes of that nature by arbitration instead of litigation is not unreasonably unfair, even between parties of unequal bargaining power. A provision so requiring is not unenforceable on the basis that it is a contract of adhesion. Additionally, however, the contract provides that neither party can require the other to arbitrate certain issues. This includes "any proceeding in which a lien holder may acquire or convey . . . possession of any property which is security under [the] Agreement."

■ GreenPoint's replevin action is a proceeding to recover possession of the manufactured home. The manufactured home is security for the indebtedness created by the terms of the contract. The replevin action is, therefore, an exception to arbitration. GreenPoint, as a lien holder, is permitted by the terms of the contract to pursue replevin in state court.

■ A person accepting a contract that excepts a lien holder's action to acquire possession of the manufactured home from arbitration would not reasonably expect to be denied access to the state court in which the lien holder brings such an action in order to challenge the lien holder's claim and seek appropriate relief for wrongs by the lien holder that arise out of the facts that are at issue. To the extent

the contract entered into by GreenPoint and Vernon Reynolds suggests otherwise, it is unconscionable and unenforceable.[5]

■ The trial court found the contract lacked mutuality. Mutuality of obligation exists when both parties to a contract agree to certain obligations to the other, notwithstanding that the respective obligations need not be equal or commensurate with one another. *Warren v. Ray County Coal Co.*, 200 Mo.App. 442, 207 S.W. 883, 885 (1919). The arbitration provision of the contract requires each party to arbitrate all disputes, torts, counterclaims, or any other matter in question between GreenPoint and Reynolds arising out of, in connection with, or in any way relating to the contract. However, neither party can require the other to arbitrate any proceeding in which a lien holder may acquire or convey title to, or possession of, property that is security by reason of the contract terms. Each party has obligations to the other with respect to disputes of the type specified by the contract. Having found the part of the contract that limited Reynolds' access to state courts while permitting GreenPoint access to be unconscionable and unenforceable, the contract does not lack mutuality of obligation.

■ This court further holds that GreenPoint is not estopped from asserting the contract's arbitration provision by reason of GreenPoint having sought replevin in state court.

Although the right to arbitrate under the [Federal Arbitration Act] can be waived, the facts of each case determine whether waiver has occurred. *Berhorst v. J.L. Mason of Missouri, Inc.*, 764

---

5. Reynolds and Nations argue that another provision of the contract, one that limits damages to actual and direct damages and waives rights to consequential, punitive or treble damages, renders the agreement unconscionable. A remedial provision such as

this is severable from the other part of the arbitration provision in that it is set out in a subparagraph separate from the arbitration provision. It does not render the agreement unconscionable. *See Swain v. Auto Services, Inc., supra*, at 109.

S.W.2d 659, 662 (Mo.App.1988). A finding that arbitration has been waived is not favored and there is a presumption against waiver. *Id.* Both Missouri and federal courts have adopted the same three-factor test to establish waiver of the right to arbitrate. The test requires that the party seeking to establish waiver bear the burden of demonstrating that the alleged waiving party: "(1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that existing right; and (3) prejudiced the party opposing arbitration by such inconsistent acts." *Id.; Stifel, Nicolaus & Co. Inc. v. Freeman,* 924 F.2d 157, 158 (8th Cir.1991). In considering this three-factor test, any doubts as to whether waiver has occurred must be resolved in favor of arbitration. *Freeman,* 924 F.2d at 158. Whether the party opposing arbitration has been prejudiced by acts inconsistent with arbitration is a determination to be made on a case-by-case basis. *Id.* at 159. "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." *Id.*
*McCarney v. Nearing, Staats, Prelogar and Jones,* 866 S.W.2d 881, 890 (Mo.App. 1993).

GreenPoint's conduct in filing the replevin action was not inconsistent with its right to arbitrate in that the filing of that particular type of action directed to collateral was permitted by the terms of the arbitration provision. Furthermore, Reynolds was not prejudiced by that act in that, as heretofore discussed, Reynolds may pursue actions of his own, as part of this proceeding, that are related to the claim for possession of the collateral GreenPoint seeks. The trial court's holding that GreenPoint waived the arbitration rights provided by the contract by proceeding with its replevin claim in state court was error. GreenPoint committed no waiver.

### Conclusion

The claims asserted by Mary Nations (Counterclaim Counts IV and V) are not subject to the arbitration provision of the contract between GreenPoint and Vernon Reynolds. Vernon Reynolds' claims for wrongful replevin and conversion (Counterclaim Count I), fraud and fraudulent misrepresentations (Counterclaim Count II), and abuse of process (Counterclaim Count III) are not subject to the arbitration claim in that the part of the arbitration provision that would deny Reynolds access to a state court in which GreenPoint seeks possession of collateral is unconscionable and unenforceable. Vernon Reynolds' claim for defamation (Counterclaim Count VI) is within the parameters of the arbitration agreement in that disposition of it requires reference to the contract. The order and judgment denying GreenPoint's motion to compel arbitration is reversed as to Counterclaim VI, Vernon Reynolds' defamation claim. In all other respects the order and judgment are affirmed. The case is remanded with directions to enter an order directed to the motion to compel arbitration that is consistent with this opinion.

BATES, C.J., and SHRUM, J., concur.