James M. Dowd, Judge
Millennium Anesthesiology Consultants, LLC, (Millennium)[1] appeals from the motion court's order overruling Millennium's motion to compel arbitration of the counterclaims filed by Brendan Walsh M.D. and Walsh Anesthesiology, LC (collectively, Walsh). We affirm.
Factual and Procedural Background
In March 2016, Dr. Walsh, a manager and part-owner of Millennium, reached a settlement agreement (Agreement) with Millennium regarding his resignation from the company and the termination of his ownership interest. Pursuant to the Agreement, Millennium agreed to pay Walsh $500,000 largely in installment payments. Walsh, for his part, agreed to the restrictive covenant[2] that he not solicit any Millennium employee to leave Millennium or to join Walsh at his new business.
The Agreement included an arbitration clause:
Arbitration. Except as expressly set forth to the contrary in this Agreement, or any agreement incorporated herein by reference, the parties agree to arbitrate any dispute, claim, or controversy arising from or concerning this Agreement....
The Agreement also excluded certain claims from arbitration:
Breach. The Parties both acknowledge that in the event either party breaches any of the provisions of this Agreement, any disputes are subject to the arbitration provision set forth in paragraph 18 below. However, to the extent the restrictive covenants and confidentiality provisions incorporated herein by reference allow for a cause of action, including but not limited to an injunction, be brought in a court of law, nothing herein shall be interpreted to limit or extinguish those rights.
On February 15, 2017, Millennium filed suit alleging that Walsh had breached the anti-solicitation provision of the Agreement when he asked a Millennium employee to leave Millennium and join Walsh's new business. Millennium also stopped paying Walsh the agreed-upon installment payments. Millennium's petition contained two counts for breach of contract and two declaratory judgment counts seeking a declaration that Millennium be relieved of its obligations under the contract due to Walsh's alleged breach.[3]
*377 In March 2017, Walsh filed his answer in which he denied that he improperly solicited any Millennium employee and counterclaimed that Millennium breached the Agreement by failing to make the installment payments. Walsh also brought two additional counts sounding in quantum meruit and unjust enrichment.
Contemporaneously with his answer and counterclaims, Walsh also filed a motion to compel arbitration of all claims and counterclaims. Millennium opposed the motion, asserting that since its claims against Walsh were for breach of the non-solicitation restrictive covenant, those claims were exempt from arbitration based on the language from the Agreement quoted above. Millennium asked the court to deny Walsh's motion to compel arbitration of all claims and counterclaims and made no request or argument at that time that Walsh's counterclaims were subject to arbitration.
In August 2017, Millennium filed an amended petition which made no substantive changes to its claims and made no allegation whatsoever that any of the claims, counterclaims, or defenses were subject to arbitration. Walsh filed his answer and counterclaims and renewed his motion to compel arbitration of the entire lawsuit. On September 22, 2017, the court denied Walsh's motion to compel arbitration.
Then, on December 29, 2017, Millennium changed its position with regard to arbitration. It amended its answer to Walsh's counterclaims to assert, for the first time, the failure to arbitrate as an affirmative defense. And Millennium also filed its own motion to compel arbitration as to Walsh's counterclaims only, while maintaining that its own claims were not subject to mandatory arbitration and could properly proceed in the circuit court. The court denied Millennium's motion and this appeal follows.[4]
Standard of Review
Whether a motion court should have granted a motion to compel arbitration, and whether a party has waived its right to arbitrate a dispute, are questions of law that this Court reviews de novo. Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 431 (Mo. banc 2015) ; Nettleton v. Edward D. Jones & Co. , 904 S.W.2d 409, 411 (Mo. App. E.D. 1995). The party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement. Jimenez v. Cintas Corp., 475 S.W.3d 679, 683 (Mo. App. E.D. 2015).
Discussion
I. Millennium waived its right to compel arbitration of Walsh's counterclaims.
A party waives its right to arbitrate if it: (1) had knowledge of the right to arbitrate; (2) acts inconsistently with that right; and (3) the party opposing arbitration was prejudiced by such inconsistent acts. Nettleton , 904 S.W.2d at 411.
The record demonstrates that Millennium knew it had the right to arbitrate Walsh's counterclaims and that Millennium acted inconsistently with that right when it failed to seek arbitration for ten months during which time it litigated in the circuit court and repeatedly opposed Walsh's efforts to compel arbitration of this case. See *378 Boulds v. Dick Dean Econ. Cars, Inc., 300 S.W.3d 614, 620 (Mo. App. E.D. 2010) ("[A] party who proceeds in a judicial forum for the resolution of an otherwise-arbitrable dispute acts inconsistently with the right to arbitrate."). As a result, our inquiry turns on the third element of waiver in the arbitration context: whether Walsh was prejudiced by Millennium's conduct.
Prejudice in this context is a fact-specific inquiry, and courts may find prejudice when a party's actions deprive the other party of the benefits of an arbitration agreement, such as the efficient and low-cost resolution of disputes. Boulds , 300 S.W.3d at 620. Prejudice may also be established when the party's conduct found to be inconsistent with the exercise of its right to arbitrate will result in the duplication of efforts by the other party. Nettleton , 904 S.W.2d at 411. This type of prejudice is particularly glaring when parties would simultaneously be required to litigate the same underlying facts in multiple forums. See Erdman Co. v. Phoenix Land & Acquisition, LLC , 650 F.3d 1115, 1119 (8th Cir. 2011) (quoting Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995) ) (internal quotation marks omitted) (finding prejudice where a party attempted to proceed simultaneously in both judicial and arbitral forums, and reasoning that the federal policy favoring arbitration "does not go so far as to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums").
We conclude that the record demonstrates that Walsh was prejudiced by Millennium's conduct. First, Millennium initiated the litigation which predictably drew Walsh's rejoinder in the form of counterclaims since Millennium had already stopped making payments under the contract. When Walsh sought to arbitrate the entire controversy, Millennium opposed this which indicated its intention to litigate the entire dispute in court. Then, after ten months in litigation, Millennium changed course with respect to arbitration when it sought to compel arbitration of Walsh's counterclaims only , while leaving its own claims to be litigated in the circuit court. We find that Millennium's tardy effort to litigate its claims while requiring Walsh's counterclaims to be arbitrated deprived Walsh of one of the principal benefits of arbitration: the relatively quick and inexpensive resolution of disputes. Boulds , 300 S.W.3d at 620.
Moreover, we are concerned with the timing of Millennium's shifting position. Millennium successfully opposed Walsh's motion to compel arbitration, which the court denied on September 22, 2017. Walsh had ten days to file an interlocutory appeal of this denial pursuant to Rule 81.04(a) and § 435,440.1. Walsh did not do so which made the court's order final, and instead could have reasonably assumed, given Millennium's consistent and steadfast opposition to arbitration in this case, that the entire dispute would be resolved in court. And it is troubling that Millennium asserted its alleged right to compel arbitration only after the time for Walsh to appeal the court's ruling on his motion to compel arbitration of Millennium's claims had expired. Whether this was intentional sandbagging or not, the result was that Millennium found itself with the strategic advantage of being able to seek to compel arbitration of Walsh's counterclaims while Walsh was barred from seeking appellate review regarding the arbitrability of Millennium's claims.
Additionally, requiring Walsh to arbitrate his counterclaims while allowing Millennium to litigate its claims in court would require the parties to litigate the same underlying facts before two separate tribunals. Such a scenario is antagonistic to judicial economy, the purposes of arbitration, *379 and common sense. See Lewallen v. Green Tree Servicing, L.L.C. , 487 F.3d 1085, 1092-94 (8th Cir. 2007) (finding that this scenario resulted in unnecessary expense, delay, duplication of efforts, and deprivation of arbitration's main purpose). The factual underpinnings of Millennium's petition and Walsh's counterclaims are nearly identical and are centered on whether Walsh improperly solicited a Millennium employee. It would be prejudicial to require Walsh to proceed with the same factual dispute in two separate forums, risking inconsistent results and wasted resources. See Erdman, 650 F.3d at 1119 ; cf. Springleaf Fin. Servs., Inc. v. Shull, 500 S.W.3d 276, 281 (Mo. App. S.D. 2016) (holding that a litigant did not establish prejudice, in part because the adverse party "indicated its willingness to arbitrate all the claims involved, so there will be no duplication of efforts nor inconsistent judgments").
No policy favoring arbitration goes so far as to allow or encourage parties to proceed simultaneously in multiple forums, risking diverging judgments, and depriving the parties of the benefits of arbitration. See Lewallen , 487 F.3d at 1092. Such situations are clear examples of prejudice. Point denied.
II. Millennium's proposed reading of the arbitration clause would render the clause substantively unconscionable.
Even if Millennium had not waived its right to arbitrate, we would still affirm the motion court's ruling because the interpretation of the arbitration clause proposed by Millennium would render the clause substantively unconscionable and therefore unenforceable. See Eaton, 461 S.W.3d at 434-36 (holding that an agreement is unconscionable that allows one party to unilaterally divest itself of the obligation to arbitrate).
An unconscionable arbitration provision will not be enforced. Manfredi v. Blue Cross & Blue Shield of Kansas City , 340 S.W.3d 126, 132 (Mo. App. W.D. 2011). Procedural unconscionability deals with the formalities of making a contract, while substantive unconscionability deals with the terms of the contract itself. State ex rel. Hewitt v. Kerr , 461 S.W.3d 798, 807 n.7 (Mo. banc 2015). Procedural unconscionability encompasses high pressure sales tactics, unreadable fine print, and misrepresentations among other unfair issues in the contract formation process. Id. Substantive unconscionability means an undue harshness in the contract terms. Id.
We find to be controlling here the Missouri Supreme Court's decision in Eaton v. CMH Homes, Inc., supra . In Eaton , the Court held an arbitration provision to be unconscionable to the extent it required one party to submit its claims to arbitration while permitting another to proceed in court for related claims. Id. at 436. The Court reasoned that proceeding in two forums could create an "anomalous situation" where a party would be required to submit its counterclaims to arbitration, while the other party proceeded with its claims involving the same critical facts in a separate tribunal. Id. at 434. Such a situation is untenable as it would require the parties "to proceed on the same issues in two separate forums, risking inconsistent results, particularly because effectively [defendant] could be precluded from asserting his defenses to the claims brought in court." Id. ; see also Greenpoint Credit; L.L.C. v. Reynolds , 151 S.W.3d 868, 875 (Mo. App. S.D. 2004) (holding an arbitration agreement unconscionable to the extent it denied defendant the ability to bring counterclaims and "seek appropriate relief for wrongs by the [plaintiff] that *380 arise out of the facts that are at issue").[5]
In the present case, the arbitration clause states that the parties agree to arbitrate any dispute "arising from" the Agreement "[e]xcept as expressly set forth to the contrary in this Agreement." The Agreement additionally states that "to the extent the restrictive covenants ... allow for a cause of action, including but not limited to an injunction, be brought in a court of law, nothing herein shall be interpreted to limit or extinguish those rights." Millennium avers that because the restrictive covenants in the Agreement "allow for" its cause of action against Walsh, Millennium is not required to arbitrate those claims. However, Millennium proceeds, Walsh is not entitled to take advantage of this arbitration exemption and is required to arbitrate his claims because they are not for breach of any restrictive covenant.
We need not reach a conclusion with respect to the correctness of Millennium's contract interpretation because its interpretation would render the arbitration clause substantively unconscionable. It is substantively unconscionable because it would likely preclude Walsh from asserting counterclaims that arise from the same facts, or involve the same transaction or occurrence, that form the basis of Millennium's cause of action. Whether Walsh breached the non-solicitation provision is critical, if not determinative, to all of his counterclaims. Similarly, Millennium has asserted that whether Walsh improperly solicited a Millennium employee is the "crux" of its petition. It would be unconscionable to permit Millennium's claims in court, but require Walsh to proceed in arbitration when both parties' claims rest on the same underlying facts. Accordingly, Millennium's proposed interpretation of the arbitration provision is unconscionable and therefore unenforceable.
Conclusion
For the reasons set forth above the order entered by the motion court is affirmed.
Sherri B. Sullivan, P.J., and Lawrence E. Mooney, J., concur.

Millennium Anesthesiology Consultants, LLC consists of two companies, an Illinois limited liability company and a Missouri limited liability company. For purposes of this appeal we treat them as one entity, and refer to them collectively as Millennium.

We presume, without deciding, that the anti-solicitation clause at issue here is a "restrictive covenant," as both parties have treated it in that way.

Millennium's claims against Brendan Walsh individually and its claims against Walsh Anesthesiology, LC are essentially identical.

An order denying a motion to compel arbitration is final and appealable immediately after the order has been issued, and the notice of appeal must be filed within ten days of the order. Sanford v. CenturyTel of Mo., LLC, 490 S.W.3d 717, 721 (Mo. banc 2016) ; Rule 81.04(a); § 435,440.1.

Notably, the court in Reynolds held that three counterclaims-wrongful replevin, fraudulent misrepresentation, and abuse of process-were not subject to arbitration because denying defendant access to the forum where plaintiff sought possession of the litigated collateral was unconscionable and unenforceable. 151 S.W.3d at 876. However, the court compelled arbitration on defendant's defamation counterclaim. Id. This, presumably, was because the defamation counterclaim did not "arise out of the facts that [were] at issue" in plaintiff's replevin action, as was the case with the other three counterclaims.